

FILED
Dec 16 2014, 1:20 pm

CLERK
of the supreme court,
court of appeals and
tax court

## FOR PUBLICATION

APPELLANT PRO SE:

**SANDRA AKIWUMI**
Tampa, Florida

APPELLEE PRO SE:

**ERIC AKIWUMI**
Lisle, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SANDRA AKIWUMI, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1403-DR-129 |
| | ) | |
| ERIC AKIWUMI, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James B. Osborn, Judge
The Honorable Kimberly D. Mattingly, Magistrate
Cause No. 49D14-0911-DR-52342

**December 16, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Sandra Akiwumi ("Mother") appeals the trial court's order finding her in contempt for denying Eric Akiwumi ("Father") parenting time with their son and failing to notify Father of her new employer's name, address, and phone number. Mother also appeals the trial court's award of attorney fees to Father. She argues that she was denied due process because she was not afforded a full opportunity to be heard. She also argues that the evidence is insufficient to support the trial court's contempt findings and that the trial court abused its discretion in ordering her to pay attorney fees. We conclude that Mother was not denied due process, that there is sufficient evidence to support the contempt findings, and that she waived her challenge regarding attorney fees. Accordingly, we affirm.

**Facts and Procedural History**

Mother and Father were married in 2004 and had one child ("Child"). In June 2010, the parties divorced. The dissolution decree incorporated the parties' settlement agreement, which granted Mother physical custody of Child and awarded Father parenting time consistent with the Indiana Parenting Time Guidelines. The settlement agreement also provided, "Due to the distance between the parties, [Father] shall provide [Mother] with 21 days written notice of his intent to visit the child at [Mother's] residence." Appellant's App. at 16. At all times relevant to this appeal, Mother lived in Tampa, Florida, and Father lived in Lisle, Illinois.

In August 2011, the parties entered an agreed order which provides in relevant part, "the Parties agree that, in the event of a change of employment, within thirty days of changing employment, the Party shall provide in writing the new employer's name, business address and telephone number." Appellee's App. at 2. In June 2013, Mother started a new job. She did not provide Father with her employer's name, address, or telephone number.

The following correspondence between Father and Mother was conducted by email unless otherwise specified. On June 7, 2013, Father wrote Mother of his intent to visit Child in Tampa from July 3, 2013 (Wednesday) to July 6, 2013 (Saturday). *Id*. at 14-15. At 8:14 p.m. on July 1, 2013, Father notified Mother that he would pick up Child on Wednesday at 8:00 a.m. and drop him off on Saturday at noon. *Id*. at 16. Mother replied that because she had not received confirmation of Father's visit with dates and times fourteen days ahead of time, she had made plans and Child would be available Friday evening through Sunday afternoon. *Id*. at 15. Father wrote that he gave Mother the dates of his visit in his June 7 email. Mother responded that Father's June 7 email failed to include the pick-up and drop-off times and restated that Child would be available July 5 to July 7. Father wrote that he notified Mother of the dates of his visit in compliance with the dissolution decree and that he would go to the "police station" to pick up Child at 8:00 a.m. on Wednesday and return him on Saturday at noon. *Id*. at 13. The "police station" refers to the District One Tampa Police Department ("District One"), where the parties had met for parenting time exchanges in the past. Mother replied that Father's short notice regarding pick-up and drop-off times was unreasonable and added, "If you translate this as me denying you time with your son, that's

3

your choice. We won't be at the police station at 8am on Wednesday morning." *Id*. at 12. At 7:33 p.m. on July 2, 2013, Father wrote Mother that he had followed the stipulations of the dissolution decree by notifying her of his intent to see Child more than twenty-one days in advance and that he would be at the police station at 8:00 a.m. to pick up Child and would drop him off on Saturday at noon. *Id*. at 12.

At 8:00 a.m. on Wednesday, July 3, 2013, Father went to District One and waited there nearly two hours, but Mother and Child never came. A police officer contacted Mother regarding the parenting time exchange. At 1:20 p.m., Mother wrote that she could meet Father at 3:30 p.m. at the Tampa Police Headquarters on Franklin Street. At 1:56 p.m., Father replied that he would be willing to pick up Child at 3:30 p.m. at District One. At 2:13 p.m., Mother responded that it was not possible for her to take Child to District One, but if Father could not pick up Child at the Tampa Police Headquarters, she could meet him at District One at 9:00 p.m. She also told Father that he would have to bring Child to the District *Two* Tampa Police Department at 8:00 a.m. on Saturday morning to drop him off or alternatively drop him off at District One at 9:00 a.m. on Sunday. At 3:04 p.m., Father wrote, "I need to [know] why you are changing the pickup and drop off location. …. [W]hat's more I have already driven to and from the original meeting spot and you didn't show up. I'm going there now to wait for you and returning him there at 8 am on Sat. I told you I leave town on Sat." *Id*. at 10. At 3:13 p.m., Mother wrote, "Its [sic] sad that you've chosen to reply at 3:04 for a meeting that is to happen at 3:30 p.m., to see your son …. Furthermore I

4

offered to meet you, despite the fact that I am at work. If you are not showing up at the location I agreed to meet you at, don't bother." *Id.* at 9.

At 7:35 p.m., Mother wrote that she was not going to drop off Child until Father specified whether he was dropping Child off at District Two at 8:00 a.m. on Saturday or at District One at 9:00 p.m. on Sunday. *Id.* At 7:48 p.m., Father received a text from Mother repeating the email message above and asking him to "[p]lease clarify immediately." *Id.* at 20. At 8:11 p.m., Father sent Mother an email that he would see her at 9:00 p.m. Father arrived at District One at 8:48 p.m. At 9:18 p.m., Father received a text message from Mother that stated that she had just read his email and that "[y]ou will have to visit [Child] another time. Next time, please give 21-days notice with dates and times of your visit so we can address scheduling conflicts in advance." *Id.* at 21-22.

Father filed a motion for rule to show cause why Mother should not be held in contempt for violating the agreed order by failing to inform him of her new employer's name, address, and telephone number and for violating the dissolution decree by failing to allow him to exercise parenting time. Following a hearing at which both parties were represented by counsel, the trial court issued an order finding Mother in contempt and ordering her to pay Father's legal expenses of $1917.90. Mother appeals.

**Discussion and Decision**

**Section 1 – Due Process**

Mother contends that the trial court conducted the contempt hearing in a manner that violated her due process rights. There are two types of contempt, direct and indirect.

5

"Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt."[1] *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), *trans. denied* (2002). Thus, Mother was found in indirect contempt of court. "Indirect contempt proceedings require an array of due process protections, including notice and the opportunity to be heard." *Henderson v. Henderson*, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010).

Indiana Code Section 34-47-3-1 provides,

A person who is guilty of any willful disobedience of any process, or any order lawfully issued:

(1) by any court of record, or by the proper officer of the court;
(2) under the authority of law, or the direction of the court; and
(3) after the process or order has been served upon the person;

is guilty of an indirect contempt of the court that issued the process or order.

Due Process protections for indirect contempt proceedings are codified in Indiana Code Section 34-47-3-5, which provides,

(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:

(1) before answering the charge; or
(2) being punished for the contempt;
to be served with a rule of the court against which the contempt was alleged to have been committed.

(b) The rule to show cause must:

---

[1] "The disobedience of a court order may [also] be categorized as either civil contempt or criminal contempt. A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party." *In re Paternity of N.T.*, 961 N.E.2d 1020, 1022 n.2 (Ind. Ct. App. 2012).

(1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;
(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and
(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.

"It is the 'rule to show cause' provision of the statute that 'fulfills the due process requirement that a contemptor be provided with adequate notice and an opportunity to be heard.'" *Carter v. Johnson*, 745 N.E.2d 237, 241 (Ind. Ct. App. 2001) (quoting *Mitchell v. Stevenson*, 677 N.E.2d 551, 560 (Ind. Ct. App. 1997), *trans. denied*).

Significantly, Mother does not assert any violations of Section 34-47-3-5. Rather, she argues that she was denied the opportunity to be heard, that is, to show cause why she should not be held in contempt. She contends that the trial court denied her counsel's request to examine Respondent's Exhibit 6 before it was admitted and barred her from conducting a thorough cross-examination of Father and presenting her own relevant background evidence. It is unclear whether Mother is arguing that the alleged errors individually resulted in due process violations, whether the cumulative effect of the alleged errors resulted in due process violations, or whether the alleged errors as a whole show that the trial court decided that she was in contempt before she was even allowed to testify, thereby denying her the opportunity to be heard.

We begin by addressing Mother's argument regarding Respondent's Exhibit 6, which consisted of emails between the parties from July 1 to 3, 2013. When Father's counsel moved to admit Respondent's Exhibit 6, Mother's counsel asked to review the emails. The

trial court said, "No, we're set for thirty minutes," and "We gotta move along." Tr. at 26. Mother's counsel told the trial court there was no objection. Mother contends that because her counsel was not afforded the opportunity to review the exhibit, she was deprived of the opportunity to object to it based on Indiana Evidence Rule 106.[2] Mother's counsel could have objected to the trial court's refusal to allow her to examine Respondent's Exhibit 6 or to its admission but did not, and therefore any error in its admission is waived. *See In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014) ("[T]he '[f]ailure to object to the admission of evidence at trial normally results in waiver and precludes appellate review.'") (quoting *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011)). Waiver notwithstanding, Mother's argument that she was prevented from objecting based on Evidence Rule 106 is unavailing. Evidence Rule 106 provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." Indiana Evidence Rule 106 incorporated the "doctrine of completeness." *Norton v. State*, 772 N.E.2d 1028, 1033 (Ind. Ct. App. 2002), *trans. denied*, "The purpose of the doctrine of completeness is to allow the introduction of additional material to place incomplete, misleading evidence in its full context." *In re Paternity of B.B.*,

---

[2] Mother makes a passing reference to Indiana Evidence Rule 1006. However, her argument with regard to this rule is entirely undeveloped, and therefore it is waived. *See Outboard Boating Club of Evansville, Inc. v. Ind. State Dep't of Health*, 952 N.E.2d 340, 344 n.3 (Ind. Ct. App. 2011) (concluding that appellant failed to make cogent argument and therefore waived issue for appellate review) (citing Ind. Appellate Rule 46(A)(8)(a)), *trans. denied* (2012).

1 N.E.3d 151, 159 (Ind. Ct. App. 2013). Mother does not argue that Respondent's Exhibit 6 actually omitted relevant emails and was therefore incomplete or misleading. Therefore, we fail to see how her substantial rights were affected, and there can be no error. *See* Ind. Evidence Rule 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

We next address Mother's argument that she was prevented from thoroughly cross-examining Father. At the hearing, Mother's counsel asked Father to explain why he waited until July 1, 2013, to provide her with pick-up and drop-off times. The trial court said, "I don't care the reason. If her defense is that she needed the specific times, that will not fly. She'll be in contempt. So if she's got another defense, that's what I want to hear[.]" Tr. at 39. In family law matters, appellate review is conducted with "'a preference for granting latitude and deference to our trial judges.'" *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind. Ct. App. 2003) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "The trial judge has wide latitude in ruling on the extent of cross-examination and only a clear abuse of discretion warrants a reversal." *St. Anthony Med. Ctr., Inc. v. Smith*, 592 N.E.2d 732, 738 (Ind. Ct. App. 1992), *trans. denied*. A trial court does not abuse its discretion by excluding irrelevant evidence. *Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1117 (Ind. Ct. App. 2000) (citing Ind. Evidence Rule 402), *trans. denied*. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401.

Mother argues that the evidence would have shed light on whether the notice requirement in the dissolution decree was satisfied. However, we think that the trial court's statements simply reveal that it did not believe that Father's failure to provide exact times would excuse Mother's failure to provide him with any parenting time when she knew the dates he was visiting. Thus, the trial court did not think the evidence was relevant. We cannot say that the trial court abused its discretion or infringed upon Mother's due process rights by excluding evidence as to why Father waited to provide Mother with exact pick-up and drop-off times.

Mother also argues that she was prevented from revealing discrepancies in Father's testimony. She directs us to the trial court's statement after her counsel asked Father when he found out that Mother wanted to meet at 3:30. The trial court stated, "It doesn't matter. He didn't see the kid the whole time he was in Florida; not once. If she's got a defense, I want to hear that. Picking him apart on the details is not going to help her defense." Tr. at 40. The trial court's statement shows that it limited this line of questioning because it found it to be irrelevant. We find no abuse of discretion or violation of due process here.

Mother also contends that she was not allowed to present relevant background evidence even though Father was allowed to do so. The simple fact that Father testified to a certain aspect of past parenting time exchanges and Mother was not permitted to testify about a different aspect of past parenting time exchanges is not in itself unfair; it depends on whether the evidence each wanted to offer was relevant. Mother fails to articulate how the background evidence she sought to introduce was relevant. "It is well settled that pro se

10

litigants are held to the same standard as are licensed lawyers." *In re Estate of Carnes*, 866 N.E.2d 260, 265 (Ind. Ct. App. 2007). Accordingly, Mother's argument is waived for failure to present a cogent argument. *See Outboard Boating Club of Evansville, Inc. v. Ind. State Dep't of Health*, 952 N.E.2d 340, 344 n.3 (Ind. Ct. App. 2011) (concluding that appellant failed to make cogent argument and therefore waived issue for appellate review) (citing Ind. Appellate Rule 46(A)(8)(a)), *trans. denie*d (2012).

Finally, Mother asserts that the trial court had already decided that she was in contempt prior to her testimony and that her testimony bore no weight or bearing on the final decision. During Father's cross-examination, Mother's counsel told the trial court that Mother's defense was that she offered to meet Father and provided him with opportunity to meet her. The trial court stated,

> She never met him. She never found her way to dad anytime he was in Tampa. For how many days? That's her defense is oh, I offered to be here, or I offered to be here. No, I offer to be here. Well, I pick this time; I pick this police station; not gonna fly. She's gonna be so in contempt unless you got more than this.

Tr. at 41. At the conclusion of the hearing, the trial court stated, "This was an unwinnable case." *Id*. at 59.

Our review of the transcript shows that Mother sought to excuse her noncompliance with court-ordered parenting time by showing that she gave Father an opportunity to meet her. The trial court simply did not agree with the theory that offering to meet Father satisfied Mother's responsibility to comply with court-ordered parenting time. We are unpersuaded

11

that the trial court's rejection of Mother's defense constituted a violation of her due process rights.

**Section 2 – Sufficiency of the Evidence**

Mother argues that the trial court abused its discretion when it found her in contempt because there was insufficient evidence to support the court's finding that she willfully violated the terms of the divorce decree and the agreed order.

> Whether a person is in contempt of a court order is a matter left to the trial court's discretion. We will reverse the trial court's finding of contempt only where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses.

*Mitchell v. Mitchell*, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003) (citation and quotation marks omitted). Mother bore the burden of showing that her violation was not willful. *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000).

As for whether Mother failed to comply with the dissolution decree's parenting time conditions, Mother's argument ignores the evidence that she emailed Father that she would not meet him at 8:00 a.m. on Wednesday at District One.  Appellee's App. at 12.  She also ignores the evidence that when she agreed to meet Father at 9:00 p.m. at District One, she decided not to meet him there after all.  *Id*. at 9.  Mother's argument is an invitation to reweigh the evidence, which we must decline.  We conclude that the trial court did not abuse its discretion in finding that Mother willfully disobeyed the dissolution decree.

Mother also argues that the trial court abused its discretion in finding her in contempt of the agreed order by failing to provide Father with her new employer's name, address, and

12

telephone. Mother admits that she did not provide Father with the required information. She argues that she forgot to give Father the information, which is not the same as willful disobedience. It is the province of the trial court to judge witness credibility, and as such it was free to disregard Mother's testimony. We conclude that the trial court did not abuse its discretion in finding that Mother willfully disobeyed the agreed order.

## Section 3 – Attorney Fees

Mother does not challenge the trial court's decision to require her to pay Father's attorney fees associated with his motion for rule to show cause. Rather, she argues that the affidavit of legal expenses and fees submitted by Father's counsel does not clearly indicate that all the recorded expenses apply to Father's motion. Respondent's Exs. 10 and 11. We note that a "party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court." *GKC Ind. Theatres, Inc., v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 652 (Ind. Ct. App. 2002). Mother did not present this argument to the trial court, and therefore it is waived. *See Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012), *trans. denied* (concluding that appellant's argument that trial court erred in awarding attorney fees to appellee where he was represented by two attorneys was waived because she did not present argument to trial court).

Affirmed.

RILEY, J., and MATHIAS, J., concur.