## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



APPELLANTS PRO SE

L.E. and E.E.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

L.E. III, B.E. & A.E. (Minor Children), Children in Need of Services

and

E.E. (Mother) & L.E. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

August 25, 2015

Court of Appeals Case No.
49A05-1412-JC-548

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge
The Honorable Danielle Gaughan, Magistrate

Trial Court Cause Nos.
49D09-1404-JC-729
49D09-1404-JC-730
49D09-1404-JC-731

**Baker, Judge.**

[1] E.E. (Mother) and L.E. (Father) appeal the judgment of the juvenile court finding their children to be children in need of services (CHINS). Finding that the juvenile court's judgment is supported by sufficient evidence and that Mother and Father have failed to make a cogent argument on appeal, we affirm.

# Facts

[2] Mother and Father have three children, L.E. III, B.E., and A.E. (the children). The children are currently four, three, and two years of age, respectively. On April 4, 2014, the Department of Child Services (DCS) received a report of possible domestic violence in the home and that the home was unsafe for the children. DCS sent Anna Pfau, a family case manager (FCM), to assess the situation.

[3] When Pfau arrived at the home, Mother refused to allow her to enter. Mother asked Pfau if she could give her a moment to clean up. Pfau waited for a few minutes until Mother returned to inform Pfau that she would have to come back another time. While Mother had the door open, Pfau could observe safety hazards inside the home. After Mother again refused to allow Pfau inside, Pfau contacted the Indianapolis Metropolitan Police Department (IMPD) and requested that officers come to the home to conduct a child welfare check.

[4] When the officers arrived, they observed Mother and Father putting the children in the car and preparing to leave. After speaking with Mother and

Father, the officers were able to convince them to allow Pfau to conduct her assessment. Upon entering the home, Pfau observed debris, including trash covering much of the floor, rotten food in the refrigerator leaking onto the kitchen floor, pesticides within reach of the children, and other safety hazards for the children, such as falling and choking hazards.

[5] When Pfau was preparing paperwork, Father told the officers that he believed they were violating his constitutional rights. One of the officers told Father to sit down, but he refused, and instead "moved as if to strike the officer." Tr. p. 194. At this point, the officers tried to physically subdue Father, who was attempting to fight them off. Father was arrested at the end of the ordeal.

[6] On April 8, 2014, DCS removed the children from the care of their parents and filed a petition alleging them to be CHINS. On September 29, 2014, the juvenile court held a factfinding hearing. At that hearing, the juvenile court heard evidence regarding Mother's significant history of mental health hospitalizations and treatment. The evidence indicated that Mother suffers from delusions and hallucinations and has been diagnosed with schizoaffective disorder. A doctor who had examined Mother testified that Mother believed she could hear the thoughts of other people and interpret those thoughts. Pfau testified that after the children were removed from the home, she received many calls and text messages from Mother in which she seemed extremely paranoid, accusing Pfau of not working for DCS and "having friends in Washington." Tr. p. 197. The results of a psychological evaluation conducted after the children's removal indicated that Mother was "extremely disorganized and

difficult to follow" and that her "thought process evidence[d] paranoia." DCS Ex. 1. The juvenile court also heard testimony indicating that Mother had been prescribed anti-psychotic medication that she had not been taking.

[7] As for Mother and Father's participation in the services that had been provided since the children's removal, a home-based service provider testified that she did not recommend that the children be returned to the home at the time of the hearing. The service provider testified that Mother was the primary caregiver and that Father was not assisting Mother in caring for the children. The service provider feared that if the children were to be returned at that time, the situation would simply revert back to the way it was prior to DCS's involvement.

[8] Following the hearing, the juvenile court found the children to be CHINS. On October 28, 2014, the juvenile court held a dispositional hearing and ordered Mother and Father to participate in reunification services. Mother and Father now appeal.[1]

# Discussion and Decision

[9] Our review of a juvenile court's determination in a CHINS proceeding is governed by Indiana Trial Rule 52. *In re T.S.*, 906 N.E.2d 801, 804 (Ind. 2009).

---

[1] Several references in Mother and Father's brief lead us to believe that they may actually wish to appeal DCS's substantiation of neglect rather than the juvenile court's CHINS finding. However, even if we wished to consider the merits of the substantiation, there is nothing in the record indicating that Mother and Father have exhausted their remedies at the agency level. Mother and Father have the right to contest the substantiation, however, they must do so within thirty days of being notified of it. 465 Ind. Admin. Code § 3-2-1; Ind. Code § 31-33-26-8.

That rule provides that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We first consider whether the evidence supports the findings, and then we consider whether the findings support the judgment. *In re T.S.*, 906 N.E.2d at 804. We view all of the evidence and the reasonable inferences to be drawn from it in the light most favorable to the judgment. *Id.*

[10] Because a CHINS proceeding is a civil action, DCS was required to prove by a preponderance of the evidence that the children were CHINS as defined in the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Here, DCS alleged that the children were CHINS pursuant to Indiana Code section 31-34-1-1, which provides that a child is a child in need of services if, before the child becomes eighteen years of age:

> (1)    the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2)    the child needs care, treatment, or rehabilitation that:
>
> > (A)    the child is not receiving; and
> >
> > (B)    is unlikely to be provided or accepted without the coercive intervention of the court.

[11] Mother and Father begin their argument by claiming that FCM Pfau's initial assessment of their home violated their right against unreasonable searches and seizures protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. Mother and Father claim that the search was motivated by racial prejudice against Father, who is Black. However, Mother and Father make no attempt to develop an argument in support of these allegations, and we decline to develop an argument on their behalf.[2]

[12] Furthermore, Mother and Father have waived these issues by failing to raise them before the juvenile court. Issues not raised before the trial court are waived on appeal. *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007). Our Supreme Court has explained that, "[a]t a minimum, a party must show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal." *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004). Therefore, even had these constitutional arguments been developed in Mother and Father's appellate brief, we would decline to consider such arguments for the first time on appeal.

---

[2] While we acknowledge that Mother and Father bring this appeal pro se, "pro se litigants are held to the same standard as are licensed lawyers." *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 740 (Ind. Ct. App. 2014). Indiana Appellate Rule 46 provides that the argument section of a party's brief "must contain the contentions of the appellant on the issue presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." Mother and Father fail to meet this standard. However, we will attempt to deal with Mother and Father's arguments on the merits to the extent that we can understand them.

[13] Mother and Father devote the remainder of their brief to pointing out instances where they disagree with the trial court's factual findings. Mother and Father do not argue that the evidence was insufficient to support the trial court's findings on any of these points. Rather, they simply allege that the trial court's findings are incorrect. After recounting the facts, Mother and Father devote their entire argument to (1) questioning Pfau's credibility and the veracity of her testimony; (2) focusing on testimony that portrayed Mother's mental state in a positive light; and (3) claiming that the home-based service provider lied to them about the CHINS process.[3] Appellant's Br. p. 3-8.

[14] The juvenile court had evidence before it that the children were living in extremely dirty conditions and surrounded by numerous safety hazards. The evidence also indicated that Father let the entire burden of caring for the children fall on Mother, who suffered from mental illnesses for which she was not taking her prescribed medication. We cannot say that the juvenile court's conclusion that the children were CHINS was clearly erroneous given this evidence. To the extent that Mother and Father's arguments even relate to evidence presented at trial,[4] they amount to a request to reweigh the evidence and judge witness credibility, which we may not do.

---

[3] Mother and Father's reply brief proceeds in the same fashion, beginning with their assertion that: "The witnesses['] credibility should be further questioned, it is only their perspective and they have admitted faults in their own credibility." Reply Br. p. 2.

[4] Even if we wished to reweigh the evidence, because Mother and Father have provided no citation to the record, we cannot determine whether their version of events finds any support in the evidence.

The judgment of the juvenile court is affirmed.

Vaidik, C.J., and Robb, J., concur.