## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 20 2015, 8:05 am
CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANT PRO SE | ATTORNEY FOR APPELLEE |
| James L. Bullock<br>Valparaiso, Indiana | Christina J. Miller<br>Lucas, Holcomb & Medrea, LLP<br>Merrillville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James L. Bullock,<br>*Appellant-Respondent,*<br><br>v.<br><br>Natasha Bullock,<br>*Appellee-Petitioner* | November 20, 2015<br><br>Court of Appeals Case No.<br>45A03-1503-DR-89<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Elizabeth F. Tavitas, Judge<br>The Honorable Nanette Raduenz, Magistrate<br><br>Trial Court Cause No.<br>45D03-1202-DR-108 |

**Baker, Judge.**

[1] James Bullock appeals from the trial court's order dissolving the marriage of James and Natasha Bullock. James raises twelve arguments on appeal, which we combine and restate as follows: the trial court erred by (1) prolonging the dissolution litigation and entering an unfair provisional order; (2) awarding spousal maintenance to Natasha; (3) distributing the marital assets in an unfair way; (4) granting Natasha sole legal custody of the parties' child; (5) ordering that he pay a portion of Natasha's attorney fees; and (6) refusing to entertain James's motion to modify the dissolution because the appeal was already pending. Finding no error, we affirm.

## Facts

[2] The parties have been engaged in an on-and-off romantic relationship since 1999, when they began living together. In 2000, Natasha was diagnosed with multiple sclerosis, and it is undisputed that James was aware of the diagnosis. Their daughter (Child), the sole child born of the marriage, was born in 2001. Natasha and James were married on April 15, 2004. On February 10, 2012, James filed a petition to dissolve the marriage; on February 27, 2012, Natasha filed a counter-petition to dissolve the marriage, seeking child support and spousal maintenance.

[3] Natasha is a licensed nurse, and although she was able to work for periods of time during the marriage, she is currently unemployed and unable to work because of her multiple sclerosis. Natasha receives $935 per month in disability benefits, and Child receives an additional $192 per month in disability benefits

because of Natasha's condition. Child lives with Natasha, and James stipulated that Natasha should have primary physical custody. James and Natasha struggle to communicate and cooperate with one another in healthy and appropriate ways. James is employed by U.S. Steel and has an average annual income of $112,000.

[4] After filing the petition and counter-petition, James and Natasha attempted to reconcile and agreed to continue the provisional hearing. Their reconciliation was unsuccessful, however, and the provisional hearing took place in October 2012. A number of status hearings were held in the early months of 2013. In June 2013, Natasha sought to extend all deadlines, including discovery, because of her ongoing illness. In September 2013, Father hired a new attorney, necessitating a continuance of a hearing set later that month. In December 2013, the parties agreed to vacate the final hearing, which had been set for December 2, 2013. On May 20, 2014, the parties agreed to a general continuance of the final hearing, which had been set for May 19, to be reset on the motion of either party, as they were engaged in settlement negotiations. To keep things moving, the trial court, on its own motion, set a telephonic status conference with counsel in August 2014. On September 5, 2014, Father requested that a final hearing be set. The trial court granted the request and set the hearing for January 6, 2015, and the hearing was finally held on that date.

[5] Following the hearing, the trial court took the matter under advisement. On February 11, 2015, the trial court issued its order. In pertinent part, the trial court ordered as follows:

- Natasha is to have sole legal custody of Child.
- The parties stipulated that there is no equity in the marital residence, and James is awarded that residence.
- Natasha is awarded 60% of the value of James's U.S. Steel pension and 401(K).
- The parties stipulated that Natasha qualifies for spousal maintenance because she is physically incapacitated and unable to support herself. Natasha's reasonable monthly expenses are $2,900, which exceeds her monthly income by $550.[1] James is to pay spousal maintenance to Natasha in the amount of $550 per month.
- Having considered all relevant factors, Natasha's attorney fees of $9,707.50 were reasonable. She has paid $2,926 of those fees, leaving a balance of $6,781.50. James is able to contribute to those fees and is ordered to pay the balance of $6,781.50.

Appellant's Supp. App. p. 1-12. James now appeals.

# Discussion and Decision

# I. Standard of Review

At the outset, we note that James is representing himself on appeal. It is well established in Indiana that pro se litigants are held to the same standard as are licensed lawyers. *See, e.g.*, *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 740 (Ind. Ct. App. 2014). In this case, James has made many arguments that wholly lack cogency. He has neglected to cite to any legal authority and repeatedly directs our attention to documents that were not submitted as evidence to the trial

---

[1] The trial court found that Natasha's monthly income consists of $935 in disability benefits, $384 that her two children (one of her children has a different father) receive due to her disability, and $1,031 in child support.

court.[2]   These issues aside, we will endeavor to discern his central arguments and address them to the best of our ability.[3]

[7]   Here, the trial court entered findings sua sponte. In such a situation, the standard of review is well-established:

> specific factual findings control only the issues that they cover, while a general judgment standard applies to issues upon which there are no findings.  It is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record.  We may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial.  Although sua sponte findings control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.
>
> As for review of the accuracy of findings that have been entered, we first consider whether the evidence supports them.  Second, we consider whether the findings support the judgment.  We will disregard a finding only if it is clearly erroneous, which means the record contains no facts to support it either directly or by inference.  A judgment also is clearly erroneous if it relies on an incorrect legal standard, and we do not defer to a trial court's

---

[2] Natasha has filed a motion to strike the portions of James's appendix that contain documents, some of which are confidential by statute, that were not submitted as evidence to the trial court. By separate order we grant that motion.

[3] James has not provided this Court with a transcript of any of the hearings below, including the provisional hearing and the final evidentiary hearing. Our effort to address his arguments is significantly hampered by the absence of a transcript.

legal conclusions.  However, we must give due regard to the trial court's ability to assess the credibility of witnesses and will not reweigh the evidence, and must consider only the evidence most favorable to the judgment along with all reasonable inferences drawn in favor of the judgment.

We also note that we "give considerable deference to the findings of the trial court in family law matters...." *MacLafferty v. MacLafferty,* 829 N.E.2d 938, 940 (Ind. 2005).  Whether reviewing a case for "clear error" or "abuse of discretion," this appellate deference is, first and foremost, a reflection that the trial court is in the best position to judge the facts, ascertain family dynamics, and judge witness credibility and the like.  "Secondly, appeals that change the results below are especially disruptive in the family law setting." *Id.* at 940.  "But to the extent a ruling is based on an error of law or is not supported by the evidence, it is reversible, and the trial court has no discretion to reach the wrong result." *Id.* at 941.

*Stone v. Stone*, 991 N.E.2d 992, 998-99 (Ind. Ct. App. 2013) (some internal citations omitted), *aff'd on reh'g*, 4 N.E.3d 666.

## II.  Matters Arising Before the Final Hearing

First, we turn to James's arguments that the trial court erred by "allow[ing] the divorce proceedings to last for 35 months" and by calculating the amount of child support owed by James in the provisional order.  Appellant's Br. p. 8.  As for the length of the proceedings, James does not direct our attention to a single request for a final hearing date—or, indeed, any hearing date—that was denied or not ruled upon in a timely fashion by the trial court.  Instead, as fully explained above, the parties repeatedly requested continuances for various

reasons and made multiple joint requests to vacate and/or reset hearings. At one point, the trial court set a status conference on its own motion because it was concerned that settlement negotiations were taking too long. We see no error whatsoever in the way the trial court managed this litigation.

[9] As for the amount owed by James in the provisional order, he seems to be arguing that, in ordering James to pay child support and household bills during the provisional period, the trial court failed to take into consideration that Natasha returned to work for a brief period of time. He also argues that the trial court did not take Natasha's disability payments into consideration.

[10] As James has not provided us with the transcript of the provisional hearing or the provisional order itself, we have no way of knowing what evidence was presented to the trial court, or even what, precisely, it ordered. In the dissolution decree, the trial court found as follows with respect to these arguments:

> Husband's Verified Petition for Modification of Provisional Hearing (sic), filed on September 4, 2014, should be denied. Husband claims that he overpaid support and maintenance during the provisional period because Wife returned to work. Although Wife did return to work for a short period of time, her disability benefits were placed on hold during this period. Wife received approximately $280.00 per week net income while she was working. Wife lost her disability benefits of $216.00 per week during that same time period. This additional $66.00 per week is not a substantial change in circumstances that would render the support payments of the provisional Order unreasonable.

Supp. App. p. 8. We have no basis aside from James's contention that the provisional order is "unfair and unjust" to second-guess the trial court's statements above. Appellant's Br. p. 8. We find no error on this basis.

## III. Spousal Maintenance

Next, James argues that the trial court erred by ordering him to pay spousal maintenance. To the extent that he contends he should not be required to pay spousal maintenance at all, he has waived this argument by stipulating to the trial court that Natasha is entitled to spousal maintenance.

To the extent that James contends that the trial court erred in calculating the amount of maintenance he is required to pay, we note that he is essentially arguing that Natasha's evidence of her monthly expenses was "fictitious" and that the expenses were "unreasonable." Appellant's Br. p. 12. It is evident from reviewing the trial court's order that it conducted a thorough review of the parties' respective financial resources as well as Natasha's expenses. Because we do not have the transcript, we are unable to evaluate the evidence provided to the trial court to support its conclusions with respect to Natasha's expenses. And in any event, James's argument amounts to a request that we reweigh evidence and assess witness credibility—a request we decline. We find no error with respect to the award of spousal maintenance.

## IV. Distribution of Marital Assets

Next, James turns to the trial court's division of the marital assets. First, he complains that the trial court ordered that the marital residence was James's

sole property. James argues on appeal that there was negative equity in the home that should have been divided equally between the parties. He has waived this argument, however, given that he stipulated that there was no equity in the residence and that he should be awarded the residence as his sole and exclusive property. Supp. App. p. 3.

[14] Second, James argues that the trial court should not have awarded 60% of the value of his pension and 401(K) to Natasha and also quarrels with its distribution of household property. James stipulated to the distribution of household property and has waived the argument. In any event, all of his arguments regarding property and asset distribution amount to a request that we reweigh evidence and assess witness credibility by discounting Natasha's testimony and evidence and favoring James's. We decline to do so. We find no error with regard to the distribution of marital assets.

## V. Legal Custody of Child

[15] Next, James argues that the trial court erred by awarding Mother sole legal custody of child. Husband contends that the trial court erred when it found that "Wife has historically made the decisions regarding the child's education, medical treatment and religious upbringing." Supp. App. p. 2. James insists that the evidence before the trial court does not support this conclusion. But given that we do not have the transcript or exhibits admitted into evidence, we have no way of evaluating this argument. The trial court considered all

required statutory factors and concluded that Mother should be awarded sole legal custody. We find no error in this portion of the trial court's order.

## VI. Attorney Fees

Next, James contends that the trial court erred by ordering him to pay the balance of Natasha's attorney fees. In essence, he argues yet again that the trial court did not adequately review the evidence of Natasha's income, insisting that she should have been able to pay more of her attorney fees than she did. This is yet another request that we reweigh the evidence and assess witness credibility, which we again decline to do. The trial court did a painstaking evaluation of the parties' financial resources and the disparity between them, and did not abuse its discretion in ordering James to pay a portion of Natasha's attorney fees.

## VII. Modification of Dissolution Decree

Finally, James argues that the trial court erred by denying his motion to modify the dissolution decree. Although wholly unclear from the sparse record on appeal, it appears that James filed a motion to modify the decree either shortly before or shortly after he filed his Notice of Appeal. On June 11, 2015, the court reporter notified this Court that James was not requesting that a transcript be prepared. Since that time, this Court, rather than the trial court, has had jurisdiction over this cause. Ind. Appellate Rule 8. Both parties assert that the trial court denied James's motion because of a lack of jurisdiction. Although we are unable to verify this assertion because the trial court's order is not

included in the record before us, we find that the trial court properly denied James's motion to modify because it will not regain jurisdiction over this cause until the appeal is completed and certified. [4]

[18] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.

---

[4] James notes that the trial court found that James has an interest in a trust and that he "agreed not to change the beneficiaries of this Trust." Supp. App. p. 6. Additionally, James "agreed . . . to maintain" his life insurance policy with Child as the sole beneficiary, and was ordered to do so until she completes college. *Id.* at 11. James argues that "[t]hese statements were not made in trial court, nor was it even spoken about or discussed at the final hearing. This statement was just inserted into the divorce decree. James is asking the Appellate Court to remove this statement and all reference of the statement from the divorce decree in its entirety." Appellant's Br. p. 11. We decline to do so, given that we do not have a transcript of the hearing and therefore cannot address this argument. James states that he has since cancelled the life insurance policy, and we express no opinion on Natasha's right to seek a contempt finding for his failure to comply with the trial court's order.