## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 08 2016, 8:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffrey C. Rocker
Beck Rocker, P.C.
Columbus, Indiana

ATTORNEY FOR APPELLEE

Christopher L. Clerc
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Smith,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Robert Bowling,<br>*Appellee-Defendant.* | July 8, 2016<br><br>Court of Appeals Case No.<br>03A01-1511-CC-2103<br><br>Appeal from the Bartholomew<br>Superior Court<br><br>The Honorable Kathleen Tighe<br>Coriden, Judge<br><br>Trial Court Cause No.<br>03D02-1004-CC-325 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Mark Smith (Smith), appeals the trial court's Order, which granted judgment in favor of Appellee-Defendant, Robert Bowling (Bowling), after the parties had entered into a mediated settlement which provided for an accounting of the parties' business.

We affirm.

## ISSUES

Smith raises three issues on appeal, which we consolidate and restate as:

> (1) Whether the trial court properly conducted the hearing on Bowling's second motion for order and judgment; and
>
> (2) Whether the accounting was performed in accordance with the terms of the mediated settlement.

## FACTS AND PROCEDURAL HISTORY

Between 2005 and 2008, Smith and Bowling were partners in a residential construction business. On April 22, 2010, Smith filed his Complaint against Bowling alleging breach of fiduciary duty, dissolution of partnership, and a request for a partnership accounting. On June 3, 2010, Bowling filed his Answer, denying the material allegations in the Complaint and asserting a counter-claim for damages.

On June 7, 2012, following discovery, the parties entered into a mediated settlement, which stated:

> Parties agree to an accounting. Accountant shall be agreed upon by parties but shall not include an accountant used by either party personally or through their businesses. All information shall be provided to the accountant who may make determinations as to appropriateness of inclusion of any documentation or information. Based upon the accountant's determination, the parties shall make payments as needed to adjust the partnership to 50/50 net result. The costs of the accounting shall be paid by the party who pays to equate to 50/50.

(Appellant's App. p. 120). On July 27, 2012, the trial court appointed Gregory Spurling (Spurling) to prepare the partnership accounting. On November 7, 2013, Spurling notified the parties by letter that:

> [t]o this date I have reviewed the piecemeal information and at best have determined that it is poor. A good deal of time has been spent on simply understanding what I have been given and how to proceed to put the information in an orderly and correct presentation. I have concluded that I will not be able to provide accurate information without the parties agreeing to some assumptions that will be made and value establishment.

(Appellant's App. p. 122). One of the problems alluded to by Spurling is the comingling of business funds and personal funds in the same account. He also noted that expenses were paid by either cash or credit cards and questioned where "the cash came from and do I need to give credit to partners that used cash or the credit cards[?]" (Appellant's App. p. 122).

[6]     On December 10, 2014, during a status hearing, Bowling moved for an order and judgment. That same day, the trial court issued its order, holding:

> This matter came before the court for a status update. Counsel for [Bowling] indicated he had a [r]equest for [o]rder and [p]artial [j]udgment that was to be filed after the conclusion of the status hearing. Further, the court finds the mediated settlement entered into between the parties required they make payments as needed to adjust the partnership to a 50/50 net result.
>
> [Spurling's] accounting review is only partially completed. The court orders this matter set for hearing on May 7, 2015 at 1:30 p.m. The parties are to provide [Spurling] any and all documents he requests or they believe are necessary to a full and complete reconciliation of the accounts **no later than February 15, 2015**. [Spurling] is requested to complete the accounting with the information provided him and provide his recommendation to the parties and the court. If records are lacking [Spurling] is to complete his report using standard accounting procedures, which may require exclusion of certain claims, expenses, etc. if appropriate.

(Appellant's App. p. 41).

[7]     On July 13, 2015, Spurling filed his completed accounting with the trial court. In his accompanying letter, Spurling disclaimed, in pertinent part:

> I have reviewed and tabulated information, and I cannot attest to the accuracy of the information provided and have used what I feel is the best information available to come to a conclusion that will follow in this letter.
>
> I was given cost summaries that I could track to vendor invoices for costs, however not with total certainty and missing in some

cases. In most cases no reference is made as to the job for which the invoice referred. I additionally have a very large "undetermined expenses" that I have not used in my analysis, the reason for which will become clear.

There is information for which I can rely on with a high degree of certainty. This includes but is not limited to the sale price of the properties sold, closing costs and interest costs relating to construction loans. In some cases I can track funds provided to construct [sic] and distributions made during construction and upon settlement of properties sold.

(Appellant's App. 53). After an annotated explanation of his accounting, Spurling concluded:

The partnership accounting is extremely poor and I have presented the information hopefully in a way that is understandable to the parties. It did not have to be this way if proper partnership documents we[re] prepared and a proper accounting systems created.

(Appellant's App. p. 54). On July 24, 2015, Bowling filed a second request for order and judgment. Smith filed a response on August 12, 2015, asserting that Spurling did "not prepare an 'accounting'" in accordance with the Indiana Business Practices. (Appellant's App. p. 90).

[8] On August 13, 2015, the trial court conducted a hearing on Bowling's motion and Smith's response. At the commencement of the hearing, Smith indicated to the trial court he was ready for the "status hearing[,]" while Bowling clarified that the hearing was intended to be a "status/final whatever hearing." (Transcript p. 6). Smith noted "Your honor, as a point of process, as I

indicated this was on my calendar set as a status hearing. I wasn't aware it was an evidentiary hearing." (Tr. p. 6). After reviewing the trial court's order of December 10, 2014, which denied Bowling's request for partial judgment "pending completion of the audit accounting reviews[,]" the trial court started the hearing "with the argument on the [s]econd [r]equest for [o]rder and [j]udgment." (Tr. p. 9). On August 21, 2015, the trial court issued its Order, providing, in pertinent part:

> 2. [Spurling] was chosen to do the accounting. [Spurling] is a Certified Public Accountant and a member of the Indiana CPA Society.
>
> 3. [Spurling] was ordered to "complete the accounting with the information provided to him and provide his recommendation to the parties and the court. If records are lacking [Spurling] is to complete his report using standard accounting procedures, which may require exclusion of certain claims, expenses, etc. if appropriate." (order of December 10, 2014).
>
> * * * *
>
> 5. [Spurling] filed his accounting with the court on July 13, 2015 and in it indicated the partnership accounting was "extremely poor." Evidence was that [Smith] (and his mother) was in control of the "books" so that any deficiencies were largely of his own making.
>
> 6. Pursuant to Spurling's report [Bowling] is owed the sum of $32,472.74 plus interest. [Spurling's] report is thorough and points out his conclusion is based upon the best information available.

7. While [Smith] now disputes CPA Spurling's methods he entered into a mediated agreement and is contractually bound by that agreement.

(Appellant's App. pp. 12-13).

On September 17, 2015, Smith filed a motion to correct error and stay of enforcement. After conducting a hearing on October 14, 2015, the trial court issued an order finding "no merit in [Smith's] claim that the August 13, 2015 hearing was set only as a status hearing." (Appellant's App. p. 14). The trial court also corrected its Order to state:

> The court finds the court's order of August 21, 2015 should be corrected to state that ALL issues were intended, and were, resolved by mediated agreement and that the parties were to make payments as needed to adjust the partnership to 50/50 net result based on CPA Spurling's accounting. This includes all transactions between the parties included the alleged $5000.00 loan. As a result there is no need for an additional hearing to address that issue.

(Appellant's App. p. 14).

Smith now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

This case comes before us as an appeal from a denial of a motion to correct error. A trial court has discretion to grant or deny a motion to correct error and

we reverse its decision only for an abuse of that discretion. *Chapo v. Jefferson Co. Plan Com'n*, 926 N.E.2d 504, 508 (Ind. Ct. App. 2010). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id*.

## II. *Hearing*

[12] Smith's first contention focuses on the procedure of the trial court's hearing on August 13, 2015. Specifically, Smith argues that "[t]he CCS reflects no notice that the August 13, 2015 hearing was going to be anything other than a status conference." (Appellant's Br. p. 9). As such, Smith claims that "the trial court abused its discretion by failing to provide notice [to] the parties that the August 13, 2015 hearing was going to be a contested hearing for the purpose of entering judgment based upon Spurling's letter; or that the trial court intended to hear argument on Bowling's [s]econd [r]equest for [o]rder and [j]udgment." (Appellant's Br. p. 10).

[13] At the commencement of the hearing, Smith requested "a point of clarification" as to whether the hearing was intended as a status hearing or an evidentiary hearing. (Tr. p. 7). He clarified that "[i]f we're going to be doing arguments on the two (2) motions that are in front of you then I think we're prepared to move forward. If this is going to be an evidentiary hearing then I think we need you to allow witnesses here and or [Spurling], who is not present." (Tr. pp. 6-7). After reviewing its most recent order of December 10, 2014, that ordered

Spurling to complete his accounting, the trial court noted that the accounting records had been received and Bowling had filed a second request for judgment, to which Smith had responded with his own filing. Both parties agreed with the trial court's summation. Without any objections, the trial court subsequently proceeded with "so we'll start with the argument on [Bowling's] [s]econd [r]equest for [o]rder and [j]udgment." (Tr. p. 9). Accordingly, rather than a formal objection by Smith, the record includes a firm confirmation that Smith was ready to argue the two motions in front of the trial court. Therefore, he waived the argument for appellate review. *See Akiwumi v. Akiwumi*, 23 N.E.3d 734, 739 (Ind. Ct. App. 2014).

[14] During the hearing, both parties presented their arguments with regard to Spurling's accounting. Bowling argued for a judgment based on the findings of the report, whereas Smith challenged the content of Spurling's accounting as well as his methods. On appeal, Smith now complains that Spurling's accounting was never introduced or admitted as evidence.

[15] The trial court's chronological case summary (CCS) recorded receipt of Spurling's letter, which included his accounting of the partnership, on July 23, 2015. At the hearing, Bowling opined that "I think [Spurling] actually filed a copy of that report with the [c]ourt," which the trial court affirmed. (Tr. p. 10). Without any objection, Bowling relied on and referenced from Spurling's report during his argument to the court. In fact, while presenting his own argument, Smith cites to the same accounting. Accordingly, because Smith never objected

to the trial court considering the accounting at any point during the hearing, he has waived the argument for appellate review. *See id*.

### III. *Mediated Settlement*

Challenging the trial court's judgment, Smith contends that the trial court abused its discretion when it characterized Spurling's letter as the accounting contemplated by the parties in the mediated settlement. Focusing on the content of Spurling's accounting and pointing to the definition of the Indiana Practice Business Organizations, Smith claims that Spurling's accounting "was simply a presentation of financial statements or accounts describing partnership transactions" and "grossly failed to address the individual partnership rights, nor any of the improprieties alleged by the parties." (Appellant's Br. p. 12). Enumerating the items Spurling failed to address, Smith opined that "[s]omething so sparse cannot, and should not, form the basis of the trial court's judgment" and now requests us to set aside the trial court's Order. (Appellant's Br. p. 15).

"A settlement is as binding and conclusive of the parties' rights and obligations as a judgment on the merits." *409 Land Trust v. City of South Bend*, 709 N.E.2d 348, 351 (Ind. Ct. App. 1999), *trans denied*. Settlement agreements are governed by the same general principles of contract law as any other agreement. *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011). As a general rule, the interpretation of the construction or legal effect of a contract is a question of law to be determined by the court. *Id*. The unambiguous

language of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document. *Id*. We will neither construe unambiguous provisions nor add provisions not agreed upon by the parties. *Id*. However, a contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation. *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008), *trans. denied*. The terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. *Id*.

[18] The parties entered into a mediated settlement which called for "an accounting" by an accountant, "who may make determinations as to appropriateness of inclusion of any documentation or information." (Appellant's App. p. 120). The settlement does not include a definition or description of what this accounting intended to entail. In its order of December 10, 2014, the trial court interpreted the accounting as being in accordance with the "standard accounting procedures, which may require exclusion of certain claims, expenses, etc. if appropriate." (Appellant's App. p. 41). Smith did not complain about this interpretation, nor did he request a specific accounting using the Indiana Practice Business Organizations' definition.

[19] "When a court is asked to interpret an agreement, it is necessary for the court to examine the parties' intent when they wrote the agreement." *Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001). If a contract is ambiguous solely because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law for the courts. *Fresh Cut,*

*Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995). The parties here agreed to have "an accounting" performed by "an accountant." (Appellant's App. p. 120). Accordingly, we agree with the trial court, that, absent further specifics, the parties must have intended to have the accounting conducted in accordance with the standard accounting procedures; if not, it would have been superfluous to appoint an accountant. Furthermore, the agreement noted that it is within the accountant's determination as "to the appropriateness of inclusion of any documentation or information." (Appellant's App. p. 120). Because of the "piecemeal information" and the poor accounting practices of the parties, Spurling used his discretion by excluding certain claims and expenses. (Appellant's App. p. 122). In his accompanying letter, Spurling explained his reason for his decisions to disregard certain information.

[20] In light of the evidence before us, we conclude that Spurling provided the parties with an accounting in accordance with the provisions of the mediated settlement agreement. As the agreement is a binding contract between Smith and Bowling, we affirm the trial court's order, dividing the partnership pursuant to the recommendations of Spurling's accounting.

## CONCLUSION

[21] Based on the foregoing, we conclude that Smith has waived his argument with regard to the trial court's hearing by failing to object, and we affirm the trial court's Order as Spurling's accounting was conducted pursuant to the terms of the mediated settlement agreement.

Affirmed.

Kirsch, J. and Pyle, J. concur