**Phyliss MITCHELL, Appellant–Respondent,**

**v.**

**Jack H. MITCHELL, Appellee–Petitioner.**

**No. 12A02–0210–CV–815.**

Court of Appeals of Indiana.

April 9, 2003.

Peter L. Obremskey, Parr Richey Obremskey & Morton, Lebanon, IN, Attorney for Appellant.

Richard D. Martin, Miller Martin & Stuard Frankfort, IN, Attorney for Appellee.

**OPINION**

MATHIAS, Judge.

Phyllis J. Mitchell's ("Phyllis") and Jack H. Mitchell's ("Jack") marriage was dissolved in Clinton Circuit Court. Pursuant to the terms of their Dissolution Settlement Agreement, a $100,000 life insurance policy on Phyllis's life was to be gifted to their daughter, Jessica. Phyllis was found in contempt because she apparently surrendered the policy and received its cash value, a total of $15,274.41. For this reason, the trial court ordered Phyllis incarcerated, but stayed the incarceration if Phyllis met the following conditions: 1) transfer to Jessica of a remainder interest in a forty-acre tract of real estate awarded to Phyllis in the dissolution decree, and 2)

transfer to Jessica of ownership of a $70,000 life insurance policy on Jack's life awarded to Phyllis in the dissolution decree. Phyllis has filed this interlocutory appeal arguing that there was insufficient evidence to support the finding of contempt, and that the sanctions imposed are unreasonable and punitive in nature.

Finding that there was sufficient evidence to support the finding of contempt, but that the sanctions imposed are punitive in nature, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts on Procedural History

On February 6, 2001, Phyllis's and Jack's marriage was dissolved, and the trial court incorporated their Dissolution Settlement Agreement into its dissolution decree. That agreement provided in pertinent part:

6.... The parties have agreed that [Phyllis] will retain the three (3) life insurance policies on Mr. Mitchell's life, which said policy amounts are $500,000, $250,000 and $70,000. [Phyllis] will retain these three (3) life insurance policies as her sole and separate property.

* * *

10. That the parties have agreed before the finalization of the Divorce a $100,000 life insurance policy on Jessica, who is the parties daughter, which is owned jointly by [Jack] and [Phyllis] will be gifted to Jessica's husband, Kevin before December 31, 2000. That the parties acknowledge this has been completed. The parties further agreed the $180,000 life insurance policy on [Jack], which is owned by [Phyllis] will be gifted to the parties daughter, Jessica. The parties acknowledge this has been completed. *That a third Life Insurance*

*Policy in the amount of $100,000, which is a policy on [Phyllis] and owned by [Jack] will be gifted to the parties daughter, Jessica after January 1, 2000[sic].* The parties acknowledge this has not been done however, will be done within sixty (60) days up on [sic] the filing of the Divorce Decree.

Appellant's App. pp. 17–19 (emphasis added). The parties agreed that when the $100,000 policy was transferred to Jessica, she would become responsible for paying the premiums.

On or about November 15, 2001, Phyllis surrendered a life insurance policy she owned, which was purchased from Harvest Life Insurance Company ("Harvest Life") in 1992, and received the cash value totaling $15,274.41. In that policy, Harvest Life had insured Phyllis's life for $100,616. Appellant's App. p. 96. Thereafter, on December 26, 2001, Jack filed a Motion for Rule to Show Cause alleging that Phyllis violated the terms of the dissolution settlement agreement by surrendering the $100,000 policy on Phyllis's life, rather than transferring it to Jessica. Appellant's App. pp. 37–38.

On February 22, 2002, the trial court held a hearing on the motion at which Phyllis argued that the dissolution settlement agreement did not sufficiently identify the insurance policy at issue and was therefore ambiguous. The trial court determined that the policy was sufficiently identified in the agreement, and Phyllis's "conduct constitutes a blatant, willful violation of the Decree of Dissolution for which she should be held in contempt of this Court." Appellant's App. p. 40. Therefore, the court ordered:

Counsel for Respondent Phyllis J. Mitchell shall have up to and including

March 25, 2002, to negotiate and present to the Court an Agreed Order allowing Phyllis J. Mitchell to purge herself of contempt executed by Petitioner Jack H. Mitchell and his counsel. Otherwise, the Court shall enter an Order punishing the Respondent for contempt and establishing her means of purging herself from the contempt finding.

*Id.*

The parties could not reach an agreement, and therefore both Phyllis and Jack submitted proposals for sanctions to the court, and a hearing was held on sanctions on July 17, 2002. At the time of the hearing, Phyllis had obtained two $50,000 life insurance policies insuring her life, which named Jessica as the beneficiary. Phyllis proposed that she would pay the premiums on those policies until the sum of $15,274.41 had been paid and transfer the policies to Jessica, at which time Jessica would then be required to pay the premiums. After the hearing, proposed orders were submitted and on September 9, 2002, the trial court adopted verbatim the proposed order submitted by Jack, which provides:

> The Court, having heretofore granted Respondent Phyllis J. Mitchell up to and including April 25, 2002 to negotiate and present to the Court an Agreed Order to purge herself of the Court's finding of contempt in the Order on the Motion for Rule to Show Cause of March 25, 2002, now finds that Phyllis J. Mitchell has failed to provide a satisfactory means of purging herself of said contempt finding.

> IT IS THEREFORE ORDERED AND ADJUDGED as follows:

> 1. For contempt, Phyllis J. Mitchell is ordered to be incarcerated at the Clinton Jail until such time as she

has placed her daughter Jessica in a position comparable to the position in which she would have been had [Phyllis] not violated the Decree of Dissolution by willfully surrendering the $100,000 life insurance policy which was to have been transferred to Jessica.

> 2. The Court stays the executed sentence on the following conditions:

> a) To purge herself of contempt, the Respondent Phyllis J. Mitchell shall transfer to Jessica a remainder interest in a 40 acre tract of real estate awarded to Phyllis J. Mitchell in the Decree of Dissolution.

> b) Phyllis J. Mitchell shall immediately order and pay for a survey of the farmland to establish a 40 acre tract of contiguous real estate in either the southeast corner or northeast corner of said real estate, with frontage on Russiaville Road. Petitioner Jack H. Mitchell and Jessica shall be consulted and shall have ultimate approval of the shape, location and layout of the 40 acre tract.

> c) Phyllis J. Mitchell shall immediately transfer ownership to Jessica of the $70,000 policy on Jack H. Mitchell's life awarded to her in the Decree of Dissolution herein.

> d) Phyllis J. Mitchell shall retain a life estate in the 40 acre tract and shall further retain the $15,274.41 she received upon surrendering the previous $100,000 policy.

> 3. The Court finds that the value of the remainder interest and $70,000 life insurance policy is probably less than the value of the wrongfully surrendered life insurance policy.

Appellant's App. pp. 44–45. Phyllis was also ordered to pay Jack's attorney fees for the contempt proceedings. Phyllis now appeals.

## I. Sufficient Evidence to Support the Contempt Finding

▮▮▮ Phyllis argues that the trial court abused its discretion when it found her in contempt because there was insufficient evidence to support the court's finding that she willfully violated the terms of the dissolution settlement agreement. "Whether a person is in contempt of a court order is a matter left to the trial court's discretion." *Evans v. Evans*, 766 N.E.2d 1240, 1243 (Ind.Ct.App.2002) (citing *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind.Ct. App.1999), *trans. denied.*) We will reverse the trial court's finding of contempt only where an abuse of discretion has been shown, which occurs only when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *MacIntosh v. MacIntosh*, 749 N.E.2d 626, 629 (Ind.Ct.App.2001), *trans. denied.*

▮▮▮ "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind.Ct.App.2001), *trans. denied* (citing *Meyer*, 707 N.E.2d at 1031). "Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Evans*, 766 N.E.2d at 1243 (citing *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind.Ct.App.1997)). However, the court's

order must be clear and certain such that there is no question regarding what a person may or may not do and no question regarding when the order is being violated. *Francies*, 759 N.E.2d at 1119 (citing *Gordon v. Gordon*, 733 N.E.2d 468, 472 (Ind. Ct.App.2000)). "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Id.* (citing *Rendon v. Rendon*, 692 N.E.2d 889, 896 (Ind.Ct.App.1998)).

Phyllis argues that the trial court's order is ambiguous because it states that she should transfer to Jessica a policy owned by Jack, which insured Phyllis's life in the amount of $100,000; however, Phyllis owned the policy she surrendered, which insured her life in the amount of $100,616. At the hearing held on the motion to show cause, Phyllis testified that she was only aware of six insurance policies that she and Jack had purchased during their marriage, and that she paid the premiums on those policies. Tr. pp. 15, 23–24. Jack testified that he believed he was the owner of the policy on Phyllis's life and discovered that he was not the owner only after she surrendered the policy.[1] Given that of the six policies, only one insured Phyllis's life and the amount of the policy listed in the agreement was only .6 percent less than the actual amount of the policy Phyllis surrendered, we find that the policy was sufficiently identified in the agreement. Therefore, when she surrendered the policy on her life instead of transferring it to Jessica, Phyllis willfully disobeyed the court's order, and this evidence supports the trial court's finding of contempt.

## II. The Contempt Order

▮▮▮ Phyllis argues that the trial court abused its discretion when it issued its

---

1. Jack's attorney drafted the dissolution settlement agreement, and Phyllis was not repre-

sented by counsel during the dissolution proceedings.

contempt order because the sanctions imposed are unreasonable and punitive in nature.[2] Phyllis contends that requiring her "to convey the remainder interest in 40 acres of her real estate is a far cry from requiring her to replace what she surrendered life insurance." Br. of Appellant at 10.

 A trial court's inherent civil contempt power is both coercive and remedial in nature. *Meyer,* 707 N.E.2d at 1031. "Contempt is for the benefit of the party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." *Cowart v. White,* 711 N.E.2d 523, 531 (Ind.1999). "The primary objective of a civil contempt proceeding is not to punish the contemnor [sic], but, ... to coerce action or to compensate the aggrieved party," and therefore, "punitive damages are not properly imposed in a civil contempt proceeding." *Evans,* 766 N.E.2d at 1245.

Our court has previously held that modifying a dissolution decree by shifting property to compensate for a contemptuous act is improper. *Thompson v. Thompson,* 458 N.E.2d 298, 300–01 (Ind.Ct.App.1984). In *Thompson,* Harry, the ex-husband, was held in contempt for failing to pay support, maintenance, mortgage payments, and health insurance, and the trial court ordered all remaining marital property transferred to Mable, the ex-wife. *Id.* at 299–300. On appeal, our court held that the trial court exceeded its contempt powers by shifting the remaining marital assets to Mable, thus modifying its dissolution decree. *Id.* at 301.

The only proper goal of a civil contempt proceeding such as this is to protect the rights, under the original court order, of those it was meant to benefit. Thus, one held in contempt for failing to pay support should be ordered to pay the total arrearage and given an opportunity to purge himself of contempt by paying the amount owed. Similarly, one held in contempt for violating an injunction may be ordered to pay consequential damages for any loss caused by his noncompliance. Under these cases, the trial court here should have ordered Harry to pay Mable a fixed sum of money calculated to satisfy the support and maintenance arrearages and to compensate Mable for any loss caused by his failure to buy insurance or pay the mortgage.

The trial court, however, chose instead to modify its original decree to give Mable most of the marital assets. Although the court's reason for doing so was to give Mable "a better possibility of paying debts and obligations incurred," such an order bears little relation to the purpose of a civil contempt proceeding—enforcement of the trial court's original order. Faced with similar facts, our supreme court has held that the trial court in a contempt proceeding has no authority to modify the dissolution decree it was called upon to enforce.

*Id.* at 300–01 (internal citations omitted). *See also Cowart,* 711 N.E.2d at 532 ("Although we appreciate the trial court's frustration with Cowart and the court's ongoing struggle to obtain compliance with its orders, the proper remedy for Cowart's

**2.** Jack argues that Phyllis has waived this argument on appeal. Br. of Appellee at 19–20. We disagree. Phyllis submitted her own proposed order and made arguments opposing Jack's proposals to the trial court. Al-

though Phyllis has included an alternative proposed sanction in her Appellant's brief, which she did not propose to the trial court, we do not find that she has waived this issue on appeal.

contempt is a judgment for damages rather than an award of the marital property to White.").

In this case, the trial court modified its dissolution decree by ordering Phyllis to transfer the $70,000 life insurance policy on Jack's life and a remainder interest in forty acres of property awarded to Phyllis in the decree. Had Phyllis transferred the policy to Jessica, Jessica would have had two options: 1) to surrender the policy and receive the cash value of $15,274.41, or 2) retain the policy and pay the premiums until Phyllis's death at which time she would receive $100,000. Therefore, requiring Phyllis to transfer a remainder interest in 40 acres of property worth over $100,000,[3] in addition to the $70,000 policy on Jack's life is not an appropriate remedy and is punitive in nature, particularly where Phyllis will be incarcerated if she fails to transfer the property.

Finally, we note that at the hearing concerning proposed sanctions, Phyllis informed the trial court that she had obtained two $50,000 life insurance policies insuring her life and naming Jessica as the beneficiary. The trial court could have fashioned an appropriate remedy using these new policies, and the $15,274.41 cash value of the surrendered life insurance policy, with additional evidence as to Jessica's wishes in this regard, in order to properly compensate her for the damages caused by Phyllis's contemptuous act.[4]

**Conclusion**

Although the evidence was sufficient to support the trial court's finding of contempt, the trial court's contempt order set forth an inappropriate remedy for Phyllis's contemptuous act because it improperly modified the dissolution decree and was punitive in nature. Therefore, we remand this case to the trial court to fashion a remedial order consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

KIRSCH and MATTINGLY–MAY, JJ., concur.

---

3. At the time of the dissolution in 2001, the property had a value of $3100 per acre. Tr. p. 56.

4. We are aware that the premiums on the two $50,000 policies are significantly higher than the $2650 annual premium on the surrendered $100,000 policy, and note that if the policies are transferred to Jessica, she should not be required to pay any premium in an amount greater than $2650.