

**FILED**

Jul 07 2017, 6:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvonne M. Spillers
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Paternity of J.W. | July 7, 2017 |
| Bailey R. Dailey, | Court of Appeals Case No. 76A04-1610-JP-2476 |
| *Appellant,* | Appeal from the Steuben Circuit Court |
| v. | The Honorable Randy Coffey, Magistrate |
| Justin L. Piersimoni, | Trial Court Cause No. 76C01-1105-JP-152 |
| *Appellee.* | |

**Bailey, Judge.**

# Case Summary

[1] B.D. ("Mother") appeals an order finding her in contempt of court, upon the petition of J.P. ("Father"). We reverse.

# Issues

[2] Mother presents two issues for review:

> I. Whether the parenting time order with which Mother is to comply incorporates an improper delegation of authority to a service provider, such that Mother is restricted in the exercise of her custodial rights; and

> II. Whether Mother was willfully in contempt of the parenting time order.

# Facts and Procedural History

[3] Mother gave birth to J.W. ("Child") on December 22, 2009. Father's paternity was established on November 13, 2012. At that time, Father was in prison after having pled guilty to a battery upon Mother. Mother was granted full custody of Child and Father was not ordered to pay child support.

[4] After Father's release from prison, he sought parenting time with Child. Mother opposed parenting time for Father, but argued that, if Father was granted parenting time, he should exercise that time under supervision. On May 17, 2016, the trial court issued an order granting Father limited parenting

time under the control and supervision of Community Anti-Violence Alliance Family Ties program ("Family Ties") in Angola.

[5] Pursuant to the order, Father was to have fifteen one-hour visits, followed by twenty two-hour visits (so long as the Family Ties Supervised Visitation Program could accommodate the parties). Father was to arrange and pay for parenting time sessions; Mother was to respond and cooperate. Both parents were to abide by the rules of the program. The order specified that "the actual day for such parenting time shall be arranged to fit the schedule of the CAVA Family Ties Program," but further stated that the parties might, by mutual agreement, alter the times and days. (App. at 11.)

[6] Father was ordered to participate in any program of counseling recommended by Family Ties for the protection of Child. Upon completion of the thirty-five supervised parenting time sessions and any recommended counseling, Father was to have seven hours of unsupervised parenting time on alternate Saturdays. Father was to begin exercising parenting time as contemplated by the Indiana Parenting Time Guidelines after June 3, 2017.[1] The parenting time order was not appealed.

---

[1] However, Father's exercise of overnight parenting time was contingent upon Father establishing a home of his own, not controlled or owned by another person. Also, parental exchanges of Child were limited to a Safe Exchange Program offered by Family Ties, as Father remained subject to a protective order for Mother's benefit.

[7] Father began individual counseling with Jeremy Lewis, a Family Ties therapist ("Lewis"). Because Child had not seen Father for several years, Family Ties scheduled parenting time as therapeutic sessions with Lewis. On the second visit, without Mother's permission, Father's mother ("Grandmother") was permitted to be present during parenting time. Mother took issue with this but was advised by Executive Director Lee David ("David") that Mother would need a court order to prevent Grandmother's attendance at a parenting time session.

[8] During the third parenting time session, Child used a code word to indicate that she was uncomfortable and wanted to leave. Lewis learned that Mother had told Child that Father had pushed Mother and Child down stairs. Lewis confronted Mother and accused her of "sabotaging" parenting time. (Tr. at 70.) At some point, Mother expressed her disagreement with Child receiving therapeutic sessions at Family Ties. Mother advised that Child already had a counselor. She also expressed some interest in obtaining the services of another person; Lewis responded with a comment suggesting that the other counselor engaged in exorcisms.

[9] Mother obtained legal counsel, who drafted a letter to David requesting that future visits between Child and Father be supervised "by anyone other than Jeremy Lewis." (Pet. Ex. 2.) The letter also stated that Mother "understands that means the visits will not be therapeutic but rather only supervised." (Pet.

Ex. 2.) On July 27, 2016, counsel also filed a motion to have parenting time relocated to the Children First Center.[2]

[10] David and Mother engaged in some discussion regarding proposed changes. David offered a Wednesday evening time slot with a therapist other than Lewis. Mother advised that Child had gymnastics on Wednesday nights. She requested a Friday evening time, but the therapist available for assignment did not work on Friday evenings. Mother notified Family Ties that Child would not attend the first scheduled Wednesday evening session. David wrote a letter to the trial court alleging Mother was non-compliant.[3]

[11] On August 30, 2016, Father filed a Petition for Contempt Citation and Rule to Show Cause. He alleged that Mother had failed to appear at parenting time or had left before the allotted time expired. Mother filed a motion for a Guardian Ad Litem and an objection to ex parte communication by David, a non-party. On October 4, 2016, the trial court conducted a hearing on the pending matters.

[12] Mother testified that she agreed with the existing court order for supervision of parenting time and "everything [the judge] says" but contended that she had "asked to reschedule" and Family Ties would not accommodate her. (Tr. at 78.) David testified to her belief that the court had entrusted Family Ties with

---

[2] By that time, neither parent lived in Angola and Child was in elementary school. Travel to Family Ties involved a two-hour round trip.

[3] The trial court indicated that the letter was filed without being read. It is apparent, however, that the trial court was made aware that David alleged Mother was non-compliant with services.

"the authority to determine whether visits should be supervised or therapeutic." (Tr. at 91.) David opined that Lewis was the most suitable therapist for Father and Child and it saved parental expense because he worked pursuant to a grant of funds. Nonetheless, she had offered therapeutic sessions on Wednesday or Sunday. Mother had agreed to neither.

[13] Lewis testified that he was providing ongoing counseling services to Father, and that Father was "open to the idea of having supervised or therapeutic" visits. (Tr. at 106.) Lewis opined that Mother's conduct was part of a "parental alienation dynamic." (Tr. at 105.) Lewis conceded that he was aware that Father was facing a new criminal charge related to violence.

[14] Father testified that the parenting time sessions had been going well before interruption. He denied that he had pushed Mother down stairs when Child was an infant, and found it inappropriate that Child had been given that information. Father testified that he had slapped Mother, grabbed her hair, and thrown her across the room; he denied pushing her down a flight of twenty-five stairs, stealing her car, or stealing her purse. He also acknowledged that he was facing a new criminal charge.

[15] On October 14, 2016, the trial court issued an order denying Mother's motion to move the parenting time location, her motion for a Guardian Ad Litem, and her petition for attorney's fees from David. The trial court found Mother in contempt of the parenting time order "for denying parenting time." (Order, pg. 6.) She was sentenced to serve 30 days in jail. Pursuant to the order, Mother

could purge herself of contempt by paying $750.00 of Father's attorney's fees and filing proof of compliance that she "demonstrate[d] an immediate and sincere attempt to follow all mandates and requirements of the Court's orders [sic] dated May 17, 2016." (Order, pg. 6.) The order specified that any prior order not in conflict with the present order remained in full force and effect. Mother now appeals.

# Discussion and Decision

## Prima Facie Error Standard of Review

At the outset, we observe that Father has not filed an appellate brief. When an appellee fails to submit an appellate brief, we do not undertake the burden of developing an argument on the appellee's behalf. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Id.* Prima facie error in this context is defined as, "at first sight, on first appearance, or on the face of it." *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Where an appellant is unable to meet this burden, we affirm. *Id.*

## Delegation of Authority

Mother first argues that the trial court infringed upon her parental rights by delegating to David the sole discretion as to whether parenting time sessions

would be therapeutic or supervised, which therapist would provide services if the session was therapeutic, and when those sessions should occur.[4]

[18] Mother observes that she was granted the sole legal and physical custody of Child, and she directs our attention to Indiana Code Section 31-14-13-4, which provides: "Except as otherwise provided in an order by a court, the custodial parent may determine the child's upbringing, which includes education, health care, and religious training, unless the court determines that the best interests of the child require a limitation on this authority." Further, this matter does not involve an allegation by the State that Child is a Child in Need of Services ("CHINS").[5]

[19] Here, the trial court made no explicit determination that it is in Child's best interests that Mother's authority be limited. Nor do the orders explicitly state that Child needs mental health treatment. It appears that the focus of mental health services in the original order was upon providing services to Father, who had been convicted of a violent crime. Nonetheless, the orders as enforced

---

[4] We acknowledge that Mother did not appeal the May 17, 2016 order within 30 days pursuant to Indiana Appellate Rule 9. However, the contempt order on appeal is based upon the trial court's interpretation and re-affirmation of the original parenting time order.

[5] A child is a child in need of services if, before the child becomes eighteen years old, the child's physical or mental condition is seriously impaired or endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and the child needs care, treatment, or rehabilitation that the child is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. Ind. Code § 31-34-1-1.

effectively limit Mother's decision-making as to whether Child should receive mental health services and with whom.

[20] According to Mother, the delegation of authority to Family Ties' executive director is akin to that reversed by a panel of this Court in *Matter of Paternity of A.R.R.*, 634 N.E.2d 786 (Ind. Ct. App. 1994). There, the trial court had ordered supervised visitation "until Family Connection Center feels mother is no longer acting against Family Connection Center's rules." *Id.* at 789. Visitation was to be increased upon the recommendation of a specific therapist. In concluding that an improper delegation had been made, the Court reasoned:

> [A] modification of visitation may not be granted absent a determination by the court that the modification would serve the best interests of the child. No statute permits this determination to be delegated to a caseworker, probation officer, guardian, or other authority, and to do so would be to undermine the safeguards inherent in reserving to a detached and impartial court the task of weighing the many considerations relevant to visitation. By authorizing the Family Connection Center to determine when supervised visitation is no longer needed and when the frequency of visitation may be increased, the court impermissibly endowed that agency with judicial powers.

*Id*.

[21] Like the order involved in *Matter of A.R.R.*, the instant parenting time order confers upon an individual employed by a service agency authority that properly resides with the parent or, in limited circumstances where court intervention is necessary, with the court. *See In re S.D.*, 2 N.E.3d 1283 (Ind.

2014) (recognizing that the State's *parens patriate* intrusion into the ordinarily private sphere of the family is limited).

[22] Mother, as sole legal custodian, was to decide Child's upbringing, including her mental health care and extra-curricular activities. When Father was granted parenting time, Mother sought protection from the trial court in the form of additional requirements of Father. That is, Father's time with Child was to be supervised and he was to receive counseling appropriate for a domestic violence perpetrator being reunited with his child. Mother did not seek mental health care for Child, nor was Child adjudicated a CHINS. However, the trial court ultimately enforced David's assignment of Father's individual therapist to provide additional services to Child despite the lack of a specific finding that it was in Child's best interests to override Mother's wishes. We conclude that Mother has demonstrated prima facie error in this regard.

## Finding of Contempt

[23] The trial court found Mother was in contempt of court for denial of parenting time. In a section entitled "Contempt for Denying Parenting Time," the order stated:

> [Mother] ignored the directives contained in the order of May 17, 2016. She did whatever she could to frustrate CAVA personnel in its proper implementation of Court's directives. She is in contempt of court.
>
> [Mother]'s continued defiance deserves coercive punishment to insure compliance with this Court's orders.

(Order, pg. 5.) Mother contends that the basis for the finding of contempt is unclear and that there is insufficient evidence of her willful disregard of a court order.

[24] There are two types of contempt, direct and indirect. The willful disobedience of any lawfully entered court order of which the offender had notice constitutes indirect contempt. *Akiwumi v. Akiwumi*, 23 N.E.3d 734, 737 (Ind. Ct. App. 2014). In cases of indirect contempt, the person charged with indirect contempt is entitled to be served with a rule to show cause. *Id.* at 738. Pursuant to Indiana Code Section 34-47-3-5, the rule to show cause must, among other requirements, clearly and distinctly set forth the facts that are alleged to constitute the contempt. Here, the allegation against Mother was that she failed to appear at parenting time or left before the allotted time expired.

[25] Whether a person is in contempt of a court order is a matter within the trial court's discretion. *Mitchell v. Mitchell*, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). We reverse the trial court's finding of contempt only where an abuse of discretion has been shown, which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Mother bears the burden, prima facie, of showing that her violation was not willful. *Akiwumi*, 23 N.E.3d at 741; *Trinity Homes*, 848 N.E.2d at 1068.

The evidence against Mother is that she opposed having Child involved in therapeutic visits with Father's counselor, at least after the first few visits.[6] Instead, she desired to have visits with Father monitored by a supervisor; as the custodial parent, she was entitled to this preference. However, based upon the service provider's insistence that therapeutic sessions take place, Mother was offered only those time slots. Mother continued to take Child to gymnastics and notified Family Ties that Child would not appear at a Wednesday night session. Although a rescheduling of gymnastics would undoubtedly have been more cooperative, we find that Mother's conduct is short of willful disobedience given the broad and ambiguous language of the parenting time order. The trial court's order, even as re-affirmed after hearing, did not mandate therapy for Child and contemplated schedule changes upon agreement. Mother has met her burden, prima facie, of showing that her conduct did not amount to willful disobedience.

# Conclusion

The trial court infringed upon the custodial rights of Mother, the sole custodial parent, who was not subject to a CHINS proceeding, by delegating to a service provider decision-making as to Child's need for therapy. Mother has shown,

---

[6] Mother may have acquiesced to an initial introduction to parenting time facilitated by a therapist. All parties agreed that Father and Child had not had contact for several years. Apparently, Child expressed no memories associated with Father.

prima facie, that she was not in indirect contempt of court. As such, the trial court's order of contempt is an abuse of discretion.

[28] Reversed.


Robb, J., concurs in result with separate opinion.
Vaidik, C.J., dissents with separate opinion.

| | |
|---|---|
| In the Paternity of J.W.<br>Bailey R. Dailey,<br>*Appellant,*<br><br>v.<br><br>Justin L. Piersimoni,<br>*Appellee.* | Court of Appeals Case No.<br>76A04-1610-JP-2476 |

**Robb, Judge, concurring in result.**

[29] As a general premise, I agree with the law stated by both Judge Bailey and Chief Judge Vaidik in their opinions. But I see the facts of this case differently than either Judge Bailey or Chief Judge Vaidik and believe Mother's situation falls somewhere in between the law as stated by each of them. Nonetheless, I ultimately agree with Judge Bailey that the trial court's order finding Mother in contempt should be reversed, and I therefore concur in result.

[30] In part, I agree with Judge Bailey that the trial court's May 2016 order constituted an improper delegation of parental authority to Family Ties, as it allowed Family Ties to determine the day on which Father would exercise his parenting time rather than allowing the parties *in conjunction with* Family Ties to

set a schedule in keeping with the trial court's order. However, I also note that, unlike the situation in *Matter of A.A.R.*, the court here specifically determined the exact conditions under which Father's parenting time would increase and evolve, not leaving the question of modification of parenting time to a non-judicial decision-maker. Rather, the trial court's broad order that Family Ties would "control and supervis[e]" parenting time allowed Family Ties to usurp Mother's decision-making about Child's treatment and schedule and yet the trial court had not found that Mother's authority as sole custodian of Child should be limited. Appendix of Appellant, Volume II at 11. To this extent, I agree the trial court improperly delegated parental authority to Family Ties.

[31] I also acknowledge Chief Judge Vaidik's point that if Mother was unhappy with the trial court allowing Family Ties this discretion, she could have appealed the order after it was entered in May of 2016. But the order as written did not put undue burdens on Mother and therefore she had nothing to appeal. It was later, when Family Ties began exercising its limited discretion in a manner that was outside the bounds of the order with respect to Mother and Child, that issues arose. When Mother took issue with how Family Ties was interpreting and implementing the court's order, she used the court process to try to resolve the conflict by requesting that parenting time be relocated and a guardian ad litem be appointed. She timely appeals the denial of those requests, and I therefore do not believe she has forfeited her right to appeal.

[32] As for the trial court's contempt finding, the trial court ordered *Father* to participate in any program of counseling Family Ties recommended. Child

already had a counselor and was not ordered by the court to participate in therapeutic counseling. Mother was not ordered to facilitate the Child's participation in *Father's* therapeutic counseling but only to cooperate with parenting time. Therefore, Family Ties was unnecessarily and without authority limiting its availability to supervise parenting time by its unilateral imposition of a therapeutic element. In other words, at the time Mother allegedly refused to comply with *Family Ties'* requirements, she was under no *court obligation* to satisfy those requirements. For these reasons, I agree the contempt finding must be reversed.

ATTORNEY FOR APPELLANT

Yvonne M. Spillers
Fort Wayne, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Paternity of J.W. | July 7, 2017 |
| Bailey R. Dailey, | Court of Appeals Case No. 76A04-1610-JP-2476 |
| *Appellant,* | Appeal from the Steuben Circuit Court |
| v. | The Honorable Randy Coffey, Magistrate |
| Justin L. Piersimoni, | Trial Court Cause No. 76C01-1105-JP-152 |
| *Appellee* | |

**Vaidik, Chief Judge, dissenting.**

[33]   I respectfully dissent. Because the evidence supports the trial court's conclusion that Mother willfully disobeyed a clear court order by denying Father parenting time, I would affirm the contempt finding.

[34]   The trial court issued a five-page parenting-time order in May 2016. The order gave Family Ties "control" over the parenting-time sessions between Father and Child, including the "actual day" of the sessions, and ordered Mother and

Father to "fully cooperate with the officials of [the] program." Appellant's App. Vol. II p. 11. Mother initially complied with the court's order, taking Child to Family Ties five times (two of which were therapeutic sessions). Tr. p. 64. But after a month of sessions Mother became upset with Family Ties and stopped complying with the May 2016 order. She filed a motion to modify the location of the parenting time from Family Ties in Angola to Children First Center in Auburn.[7] While that motion was pending, Mother did not take Child to Family Ties. Father responded by filing a petition for contempt, and the trial court found Mother in contempt for "ignor[ing] the directives contained in the order" and "denying [Father] parenting time." Appellant's App. Vol. II pp. 175-76.

[35] Mother now appeals her contempt finding, but it is hard to tell if she is doing so by attacking the May 2016 order that gave Family Ties discretion or by challenging the manner in which Family Ties exercised that discretion. In any event, neither of these arguments has merit.

[36] Addressing the first basis, Mother claims that the trial court erred by "delegat[ing]" its judicial authority to Family Ties to determine "whether the supervised visits ought to be therapeutic" and "which date the visits must occur." Appellant's Br. p. 16. Mother, however, did not appeal the May 2016 order within thirty days and therefore has forfeited her right to appeal this

---

[7] Ironically, Mother's motion to modify requested **therapeutic** parenting time at the new location. Appellant's App. Vol. II p. 16.

order.  *In re D.J.*, 68 N.E.3d 574, 579 (Ind. 2017); *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014).  Nevertheless, a reviewing court may exercise discretion to decide the merits of a forfeited appeal.  *D.J.*, 68 N.E.3d at 579.  The question is whether there are "extraordinarily compelling reasons" to justify reaching the merits of a forfeited appeal.  *O.R.*, 16 N.E.3d at 971.  Because Mother has not identified such reasons here, I would not reach the merits of this issue.

[37]    As for the second basis, Mother asserts that Family Ties "interpreted the Court's Order as delegating to [it] the authority to determine if the supervised sessions ought to be therapeutic in nature," without the approval of the trial court.[8]  Appellant's Br. p. 17.  As I already noted, Mother has changed her position on appeal as she requested therapeutic parenting time in her motion to modify.  In any event, even if Mother believed that Family Ties was abusing the discretion it had been given in the May 2016 order by requiring the visits to be therapeutic as opposed to supervised, she still was not entitled to stop bringing Child to Family Ties without a new court order in hand.  Even though Mother

---

[8] Judge Bailey likens this case to *In re Paternity of A.R.R.*, 634 N.E.2d 786 (Ind. Ct. App. 1994).  In that case, the trial court ordered that visitation between the mother and the child would continue at Family Connection Center with the same frequency and duration that was then occurring and that it would be fully supervised until the Family Connection Center felt that the mother was no longer acting against the center's rules.  In addition, the court ordered that visitation would increase upon the therapist's recommendation.  We reversed this order on appeal because it left the determination of "when supervised visitation [was] no longer needed and when the frequency of visitation may be increased" to Family Connection Center instead of to the trial court.  That impermissible endowment of judicial powers is simply not present here.  The trial court's May 2016 order carefully set out Father's parenting time, starting with one hour per week for fifteen weeks under the "control and supervision" of Family Ties and ending with overnight parenting time after June 3, 2017, pursuant to the Indiana Parenting Time Guidelines, provided that Father had established a stable home of his own.  Appellant's App. Vol. II p. 13.

filed a motion to modify the parenting time from Family Ties in Angola to Children First Center in Auburn, the court had not ruled on this motion. While this motion was pending, Mother was still required to bring Child to Family Ties. Mother's failure to do so led to Father's petition and the trial court's contempt finding.[9]

[38] Until modified or vacated, a court order remains in effect. A party can be held in contempt for failing to follow a court's order if the party willfully disobeys it. *City of Gary v. Major*, 822 N.E.2d 165, 169-70 (Ind. 2005) (noting that a party can even be held in contempt of an erroneous order and explaining that the only remedy from an erroneous order is to appeal it). In addition, the order must be clear and certain as to what the party must do or not do. *Id.* at 170. Here, the trial court found that its May 2016 order should have been "easily understood" and was written in a way to give Family Ties control over how the parenting-time sessions were conducted. Appellant's App. Vol. II p. 172; Tr. p. 86. I agree. The order provided that Family Ties had "control" over the parenting-time sessions between Father and Child. Mother did not like how

---

[9] Mother said she did not bring Child to Family Ties because Child had gymnastics class on the night that Family Ties scheduled the sessions after she requested a change in therapist. But as the trial court explained in its order:

> The Court never heard anything about the gymnastic[s] classes. The Court is therefore unaware where these classes occur or whether these classes occur on any other night. Most evidently missing from the testimony is evidence which revealed whether such classes are available at other gyms or facilities. This absence is especially troubling since the Court doubts that, in a community the size of Fort Wayne, the only gymnastics class offered for seven year old girls is at one location and is only offered on Wednesday nights. Other alternatives must exist.

Appellant's App. Vol. II p. 172 n.1.

Family Ties was exercising the control it was given. So she took matters into her own hands and stopped going to Family Ties without a new court order. I would therefore affirm the trial court's finding that Mother was in contempt.