Bailey, Judge.
Case Summary
B.D. (“Mother”) appeals an order finding her in contempt of court, upon the petition of J.P. (“Father”). We reverse.
Issues
Mother presents two issues for review:
I. Whether the parenting time order with which Mother is to comply incorporates an improper delegation of authority to a service provider, such that Mother is restricted in the exercise of her custodial rights; and
II. Whether Mother was willfully in contempt of the parenting time order.
Facts and Procedural History
 Mother gave birth to J.W. (“Child”) on December 22, 2009. Father’s paternity was established bn November 13, 2012. At that time, Father was in prison after having pled guilty to a battery upon Mother. Mother was granted full custody of Child and Father was not ordered to pay child support.
After Father’s release from prison, he sought parenting time with Child. Mother opposed parenting time for Father, but argued that, if Father was granted parenting time, he should exercise that time under supervision. On May 17, 2016, the trial court issued an order granting Father limited parenting time under the control and supervision of Community Anti-Violeiice Alliance Family Ties program (“Family Ties”) in Angola.
Pursuant to the order, Father was to have fifteen one-hour visits, followed by *978 twenty two-hour visits (so long as the Family Ties Supervised Visitation Program could accommodate the parties). Father was to arrange and pay for parenting time sessions; Mother was to respond and cooperate. Both parents were to abide by the rules of the program. The order specified that “the actual day for such parenting time shall be arranged to fit the schedule of the CAVA Family Ties Program,” but further stated that the parties might, by mutual agreement, alter the times' and days. (App. at 11.)
Father was ordered to participate in any program of counseling recommended by Family Ties for the protection of Child. Upon' completion of the thirty-five supervised parenting time sessions and any recommended counseling, Father was to have seven hours of unsupervised parenting time on alternate Saturdays. Father was to begin exercising parenting time as contemplated by the Indiana Parenting Time Guidelines after June 3, 2017.[1] The parenting time order was not appealed.
Father began individual counseling with Jeremy Lewis, a Family Ties therapist (“Lewis”). Because Child had not seen Father for several years, Family Ties scheduled parenting time as therapeutic sessions with Lewis. On the second visit, without Mother’s permission, Father’s mother (“Grandmother”) was permitted to be present during parenting time. Mother took issue with this but was advised by Executive Director Lee David (“David”) that Mother would need a court order to prevent Grandmother’s attendance at a parenting time session.
During the third parenting time session, Child used a code word to indicate that she was uncomfortable and wanted to leave. Lewis learned that Mother had told Child that Father had pushed Mother and Child down stairs. Lewis confronted Mother and accused her of “sabotaging” parenting time. (Tr. at 70.) At some point, Mother expressed her disagreement with Child receiving therapeutic sessions at Family Ties. Mother advised that Child already had a counselor. She also expressed some interest in obtaining the services of another person; Lewis responded with a comment suggesting that the other counselor engaged in exorcisms.
Mother obtained legal counsel, who drafted a letter to David requesting that future visits between Child and Father be supervised “by anyone other than Jeremy Lewis.” (Pet. Ex. 2.) The letter also stated that Mother “understands that means the visits will not be therapeutic but rather only supervised.” (Pet. Ex. 2.) On July 27, 2016, counsel also filed a motion to have parenting time relocated to the Children First Center.[2]
David and Mother engaged in some discussion regarding proposed changes. David offered a Wednesday evening time slot with a therapist other than Lewis. Mother advised that Child had gymnastics on Wednesday nights. She requested a Friday evening time, but' the therapist available for assignment did not work on Friday evenings. Mother notified Family Ties that Child would not attend the first scheduled Wednesday evening session. David wrote a letter to the trial court alleging Mother was non-compliant.[3]
*979 On August. 30, 2016,- Father filed a Petition for Contempt Citation and Rule to Show Cause. He alleged that Mother had failed to appear at parenting time or had left before the allotted time expired. Mother filed a motion for a Guardian Ad Litem and an objection to ex parte communication by David, a non-party. On October 4, 2010, the trial court conducted a hearing on the pending matters.
Mother testified that she agreed with the existing court order for supervision of parenting time' and “everything [the judge] says” but contended that she had “asked to reschedule” and Family Ties would not accommodate..her. (Tr. at 78.) David testified to her belief that the court had entrusted Family Ties with “the authority to determine whether visits should be supervised or therapeutic.” (Tr. at 91.) David opined that Lewis was the most suitable therapist for Father and Child and it saved parental expense because he worked pursuant to a grant of funds. Nonetheless, she had offered therapeutic sessions on Wednesday or Sunday. Mother had agreed to neither.
Lewis testified that he was providing ongoing counseling services to Father, and that Father was “open to the idea of having supervised or therapeutic” visits. (Tr. at 106.) Lewis opined that Mother’s conduct was part of a “parental alienation dynamic.” (Tr. at 105.) Lewis conceded that he was aware that Father was facing a new criminal charge related to violence.
Father testified that the parenting time sessions had been going well before interruption. He denied that he had pushed Mother down stairs when Child was an infant, and found it inappropriate that Child had been given that information. Father testified that he had slapped Mother, grabbed her hair, and thrown her across the room; he denied pushing her down a flight of twenty-five stairs, stealing her car, or stealing her purse. He also acknowledged that he was facing a new criminal charge.
On October 14, 2016, the trial court issued an order denying Mother’s motion to move the parenting time location, her motion 'for a Guardian Ad Litem, and her petition for attorney’s fees from David. The trial court found Mother in contempt of the parenting time order “for denying parenting time.” (Order, pg. 6.) She was sentenced to serve 30 days in jail. Pursuant to the order, Mother could purge herself of contempt by paying $750.00 of Father’s attorney’s fees and filing proof of compliance that she “demonstrate^] an immediate and sincere attempt to follow all mandates and requirements of the- Court’s orders [sic] dated May 17, 2016.” (Order, pg. 6.) The order specified that any prior order, not in conflict with the present order remained ip full force and effect. Mother now appeals.
Discussion and Decision
Prima Facie Error Standard of Review
 At the outset, we observe that Father has not filed an appellate brief. When an appellee fails to submit an appellate brief, we do not undertake the burden of developing an argument on the appellee’s behalf. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we reverse the trial court’s judgment if the appellant’s brief presents a case of prima facie error. Id. Prima facie error in this context is defined as, “at first sight, on first appearance, or on the face of it.” Santana v. Santana, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Where an appellant is unable to meet this burden, we affirm. Id.
*980 Delegation of Authority
 Mother first argues that the trial court infringed upon her parental rights by delegating to David the sole discretion as to -whether parenting time sessions would be therapeutic or supervised, which therapist would provide services if the session was therapeutic, and when those sessions should occur.[4]
Mother observes that she was granted the sole legal and physical custody of Child, and she directs our attention to Indiana Code Section 31-14-13-4, which provides: “Except as otherwise provided in an order by a court, the custodial parent may determine the child’s upbringing, which includes education, health care, and religious training, unless the court'determines that the best interests of the child require a limitation on this authority.” Further, this matter does not involve an allegation by the State that Child is a Child in Need of Services (“CHINS”).[5]
Here, the trial court made no explicit determination that it is in Child’s best interests that Mother’s authority be limited. Nor do the orders explicitly state that Child needs mental health treatment. It appears that the focus of mental health services in the original order was upon providing services to Father, who had been convicted of a violent crime. Nonetheless, the orders as enforced effectively limit Mother’s decision-making as to whether Child should receive mental health services and with whom.
According to Mother, the delegation of authority to Family Ties’ executive director is akin to that reversed by a panel of this Court in Matter of Paternity of A.R.R., 634 N.E.2d 786 (Ind. Ct. App. 1994). There, the trial court had ordered supervised visitation “until Family Connection -Center feels mother is no longer acting against Family Connection Center’s rules.” Id. at 789. Visitation was to be increased upon the recommendation of a specific therapist. In concluding that an improper delegation had been made, the Court reasoned:
[A] modification of visitation may not be granted absent a determination by the court that the modification would serve the best interests -of the child. No statute permits this determination to be delegated to a caseworker, probation officer, guardian, or other authority, and to do so would be to undermine the safeguards inherent in reserving to a detached and impartial court the task of weighing the many considerations relevant to visitation. By authorizing the Family Connection Center to determine when supervised visitation is no longer needed and when the frequency of visitation may be increased, the court im-permissibly endowed that agency with judicial powers.

Id.

Like the order involved in Matter of A.R.R., the instant parenting time order confers upon an individual employed by a service agency authority that properly re *981 sides with the parent or, in limited circumstances where court intervention is necessary, with the court. See In re S.D., 2 N.E.3d 1283 (Ind. 2014) (recognizing that the State’s parens patriate intrusion into the ordinarily private sphere of the family is limited).
Mother, as sole legal custodian, was' to decide Child’s upbringing, including her mental health care and extra-curricular activities. When Father was granted parenting time, Mother sought protection from the trial court in the form of additional requirements of Father. That is, Father’s time with Child was to be supervised and he was to receive counseling appropriate for a domestic violence perpetrator being reunited with his child. Mother did not seek mental health care for Child, nor was Child adjudicated a CHINS. However, the trial court ultimately enforced David’s assignment of Father’s individual therapist to provide additional services to Child despite the lack of a specific finding that it was in Child’s best interests to override Mother’s wishes. We conclude that Mother has demonstrated prima facie error in this regard.
Finding of Contempt
 The trial court found Mother was in contempt of court for denial of parenting time. In a section entitled “Contempt for Denying Parenting Time,” the order stated:
[Mother] ignored the directives contained in the order of May 17, 2016. She did whatever she could to frustrate CAVA personnel in its proper implementation of Court’s directives. She is in contempt of court.
[Mother’s continued defiance deserves coercive punishment to insure compliance with this Court’s orders.
(Order, pg. 5.) Mother contends that the basis for the finding of contempt is unclear and that 'there is insufficient evidence of her willful- disregard of a court order.
 There are two types of contempt, direct and indirect. The willful disobedience of any lawfully entered court order of which the offender had notice constitutes indirect contempt. Akiwumi v. Akiwumi, 23 N.E.3d 734, 737 (Ind. Ct. App. 2014). In cases of indirect contempt, the person charged with indirect contempt is entitled to be served with a rule to show cause. Id. at 738. Pursuant to Indiana Code Section 34-47-3-5, the rule to show cause must, among, other requirements, clearly and distinctly set forth the facts that are alleged to constitute the contempt. Here, the allegation against Mother was that she failed to appear at parenting time or left before the allotted time expired.
 Whether a person is in contempt of a court order is a matter within the trial court’s discretion. Mitchell v. Mitchell, 785 N.E.2d 1194, 1198 (Ind. Ct. App. 2003). We reverse the trial court’s finding of contempt only where an abuse of discretion has been shown, which occurs when the trial court’s decision is against the logic and effect of the facts and circumstances before it. Id. When we review a contempt order, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. Mother bears the burden, prima facie, of showing that her violation was not willful. Akiwumi, 23 N.E.3d at 741; Trinity Homes, 848 N.E.2d at 1068.
The evidence against Mother is that she opposed having Child involved in therapeutic visits with Father’s counselor, at least after the first few visits.[6] Instead,, she *982 desired to have visits with Father monitored by a supervisor; as the custodial parent, .she was entitled to this preference. However, based upon the service provider’s insistence that therapeutic sessions take place, Mother was offered only those time slots. Mother continuéd to take Child to gymnastics and' notified Family Ties that Child would not appear at a Wednesday night session. Althoúgh a" rescheduling of gymnastics would undoubtedly have been more cooperative, we find that Mbther’s conduct is short of willful disobedience given the broad and ambiguous language of the parenting time order. The trial court’s order, even as re-affirmed after hearing, did not mandate therapy for Child and contemplated schedule changes upon agreement. Mother has met her burden, prima facie, of showing that her conduct did not amount to willful disobedience.
Conclusion
The trial court infringed upon the custodial rights of Mother, the sole custodial-parent, who was not subject to a CHINS proceeding, by delegating to a service provider decision-making as to Child’s need.for therapy. Mother has shown, pri-ma facie, that she was not in indirect contempt of court. As such, the trial court’s order of contempt is an abuse of discretion.
Reversed.
Robb, J.; concurs in result with separate opinion.
Vaidik, C. J., dissents with separate • opinion.

.However, Father’s exercise of overnight parenting time was contingent upon Father ■ establishing a home of his own, not controlled or owned by another person. Also, parental exchanges of Child were limited to a Safe Exchange Program offered by Family Ties, as Father remained subject to a protective order for Mother’s benefit.

. By that time, neither parent lived in Angola and Child was in elementary school. Travel to Family Ties invplved a two-hour round trip.

. . The trial court indicated that the letter was filed without being read. It is apparent, however, that the trial court was made aware that *979 David alleged Mother was non-compliant with services.

. We acknowledge that Mother did not appeal the May 17, 2016 order within 30 days pursuant to Indiana Appellate Rule 9. However, the contempt order on appeal is based upon the trial court’s interpretation and re-affirmation of the original parenting time order.

. A child is a child in need of services if, before the child becomes eighteen years old, the child’s physical or mental condition is seriously impaired or endangered as a result of the inability, refusal, or neglect of the child’s parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and the child needs care, treatment, or rehabilitation that tire child is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. Ind. Code § 31-34-1-1.

. Mother may have acquiesced to an initial introduction to parenting time facilitated by a therapist. All parties agreed that Father and Child had not had contact for several years. Apparently, Child expressed no memories associated with Father.